The Full Commission has reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Chrystal Stanback. The appealing party has not shown good ground to reconsider the evidence; receive further evidence; rehear the parties or their representatives; or amend the Opinion and Award.
 ***************
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties at the hearing as:
 STIPULATIONS
1. On November 22, 1995, the parties were subject to and bound by the provision of the North Carolina Workers' Compensation Act, and that the employer-employee relationship existed between plaintiff and defendant-employer.
2. On November 22, 1995 the American Insurance Company (Fireman's Fund) was the carrier on the risk for the defendant-employer.
3. The plaintiff sustained an injury by accident arising out of and in the course of her employment on November 22, 1995, and pursuant to a Form 60 Agreement dated December 5, 1995 the defendants paid compensation to the employee at the rate of $80.67 per week from November 23, 1995 through December 17, 1995, and the employee returned to her regular work on December 18, 1995 at the same average weekly wage.
4. The parties stipulate to the Form 22 wage chart, from which the Commission may compute the plaintiff's average weekly wage, which is found in Section 5, pages 55-56 of Stipulated Exhibit #1.
 ***************
The Full Commission adopts the findings of fact found by the Deputy Commissioner as follows:
 FINDINGS OF FACT
1. The plaintiff began working part-time for the defendant-employer in June of 1995, as a Food Court Worker at their Hanes Mall location in Winston-Salem, North Carolina. She generally worked approximately twenty hours per week. Plaintiff was 64 years of age at the time of the hearing and had retired from a career of manual labor including hospital laundry work and institutional housekeeping. Plaintiff graduated from high school and matriculated for one year at Winston-Salem State University in the child care program. Though she had a history of diabetes, hypertension and probable cardiovascular disease, these conditions did not hinder her from performing her duties as a Food Court Worker.
2. The duties of a Food Court Worker included keeping the food court area clean, emptying trash containers, moving heavy tables and chairs, operating cleaning equipment, mopping floors, carrying trays and cleaning bathrooms. Plaintiff was required to lift heavy trash bags and other objects to a height of forty-eight inches at any time, and the job included repetitive stooping and bending.
3. On November 22, 1995, plaintiff sustained an admittedly compensable injury by accident arising out of and within the course of her employment, when, after plaintiff had entered a ladies bathroom to clean, she stepped on a sanitary napkin causing her foot to slip forward out in front of her, causing her left leg and back to bend backwards hyperextending both her left leg and back. She was able to grab onto something to keep her from falling, but she felt immediate and extreme pain in her left hamstring area.
4. Plaintiff was transported by ambulance to Forsyth Memorial Hospital Emergency Room. The emergency room physician, Dr. Kimball Johnson, examined plaintiff and diagnosed an acute muscle tear in the posterior aspect of her left leg between the hip and knee. Dr. Johnson recommended the use of ice to minimize her pain, prescribed Norflex and Votaren for inflammation and pain, and took her out of work for four to five days. Votaren is a pain reliever which has the effect of masking pain which could effect the manifestation of problems in an area other than plaintiff's hamstring.
5. Following her discharge from the emergency room, plaintiff began experiencing hip discomfort as well as pain in her hip, buttock and upper left leg. The defendants scheduled plaintiff to see Dr. Timothy McGowen, an orthopedic surgeon. Plaintiff was seen on December 4, 1995 at which time she presented with complaints of her left upper leg and left hip pain.
6. Dr. McGowen, who only saw plaintiff once, diagnosed a probable hamstring injury to her left leg. Dr. McGowen advised plaintiff to apply ice to her thigh, stretch her limb and take Advil as needed. He further advised plaintiff to ambulate as tolerated, but did not give plaintiff a return appointment. Further, despite the severe pain in her leg, he instructed plaintiff to return to work on December 18, 1995, without restrictions. Plaintiff followed Dr. McGowan's instructions.
7. Plaintiff continued to experience left leg and left hip pain after she returned to work on December 18, 1995. Within two weeks of her return to work with no restrictions, and while plaintiff was lifting trash bags weighing in excess of thirty pounds and moving furniture, her back also began to hurt. She did not seek another appointment with Dr. McGowan because she did not think that she was covered by workers' compensation for another visit. Since her husband's insurance expired due to his incarceration, plaintiff could not afford to pay for a doctor's visit, so plaintiff continued to work in pain, taking a multitude of over-the-counter medications and using heat and rest to help alleviate her symptoms.
8. Mr. Gordon Shannon, plaintiff's supervisor, became aware of plaintiff's complaints of pain in her left leg, hip and back within weeks of her return to work on December 18, 1995. About two weeks prior to April 10, 1996 plaintiff began experiencing some discomfort radiating from her lower back into her leg. On or about April 10, 1996 the pain that radiated from her back down to her leg was so severe that she had to leave work. She notified her supervisor, went home and went to bed; took over-the-counter medications, but the pain was persistent, so she went to the North Carolina Baptist Hospital emergency room on April 12, 1996. Her complaints at the hospital were of left leg pain and low back pain radiating down her left leg; and plaintiff described her accident of November 22, 1995. The emergency room physician ordered X-rays, prescribed pain medications and referred plaintiff to Dr. Leon Grobler, an orthopedist. Plaintiff has not returned to work since April 10, 1996.
9. On April 18, 1996, plaintiff was seen by Dr. Leon Grobler, at which time she presented with pain in her left hip radiating to the left leg, numbness and weakness, her left leg was slightly bigger than the right, and her pain was aggravated by most activities but improved with sitting. Upon examination Dr. Grobler found that plaintiff walked with a left sided limp and after testing, he concluded that she had several neurological deficits including decreased sensation in the S1 and L5 distribution and decreased hip motion with pain. Dr. Grobler ordered a myleogram whose results showed moderate L4-5 spinal stenosis with facet joint arthrosis and ligamentum flavum hypertrophy and Grade I spondylolisthesis at L4-5 level. To treat her condition Dr. Grobler recommended epidural infiltration, which was performed on May 23, 1996 which led to substantial improvement of plaintiff's back and left leg pain.
10. On June 24, 1996 Dr. Grobler released plaintiff to return to work with a twenty pound lifting restriction for four weeks. Plaintiff's daughter presented the release form to the defendant-employer, however, she was told that if plaintiff could not come back to her regular duties she could not come back at all. Plaintiff's condition subsequently deteriorated, and she was referred to the self-care spine program. The physical therapist contacted the defendant-employer to determine how the plaintiff would be permitted to work within her restrictions; however, no light duty work was ever provided to the plaintiff.
11. On September 4, 1996, plaintiff was seen by Dr. Stephen Hughes, who assumed plaintiff's care from his partner, Dr. Grobler. At this time, plaintiff was experiencing severe left extremity discomfort. Dr. Hughes proceeded with a course of epidural injections in an effort to decrease her pain, however, plaintiff was having very little response to the injections.
12. By January 30, 1997, plaintiff continued to experience back and left leg pain. A CT myleogram revealed that plaintiff had severe facet joint arthosis as well as spondylosthesis and nerve root compression. At this point Dr. Hughes recommended decompressive surgery and fusion, but considering plaintiff's weight, age and high activity level she is at high risk for complications. Dr. Hughes eventually rated plaintiff with a twenty percent (20%) permanent partial disability rating to her back as a result of her condition. As of the time for hearing, plaintiff had not opted for surgery. Plaintiff's last office visit with Dr. Hughes was March 13, 1997.
13. Dr. Hughes opined that plaintiff's accident on November 22, 1995 aggravated an asymptomatic pre-existing condition and that the hyperextending incident on November 22, 1995 caused plaintiff's injury to her left leg and left hip area. Dr. Hughes also opined that it is very likely that plaintiff will never be able to work in any capacity that she has worked in the past; and that her limitations include no repetitive and only minimal bending and stooping and no lifting over ten pounds.
14. After one office visit with plaintiff, Dr. McGowen was of the opinion that plaintiff's accident of November 22, 1995 was not connected to her present complaints of back pain radiating to her left leg. However, he did admit that an injury like plaintiff's could cause a person to walk differently and aggravate a condition in their back and also to develop back pain. In addition, Dr. McGowan acknowledged that a lifting event could incite pain and problems in an asymptomatic back with pre-existing degenerative conditions.
15. The greater weight of the evidence in this matter establishes that plaintiff's admittedly compensable injury by accident of November 22, 1995 aggravated and significantly contributed to her condition of severe facet joint arthrosis, spondylolisthesis and nerve root compression. As a result of her injury by accident of November 22, 1995 plaintiff sustained a twenty percent (20%) permanent partial disability rating to her back and is permanently and totally disabled from earning the same or greater wages as her pre-injury wages in the same employment with defendant-employer or in any other employment.
16. Based on calculations from the stipulated Form 22, plaintiff's average weekly wage is $99.68, yielding a compensation rate of $66.45.
 ***************
Based upon the findings of fact, the Full Commission concludes as follows:
 CONCLUSIONS OF LAW
1. On November 22, 1995, plaintiff sustained an admittedly compensable injury by accident to her left leg, hip and back which arose out of and in the course of her employment with defendant-employer. Said injury by accident resulted in the aggravation and acceleration of her conditions of severe facet arthrosis, spondylolisthesis and nerve compression. G.S. § 97-2(6).
2. As a result of plaintiff's injury by accident on November 22, 1995, the aggravation and acceleration of her conditions of severe facet arthrosis, spondylolisthesis and nerve compression, and due to her education, work history and lack of vocational skills, plaintiff is totally disabled, and is entitled to weekly compensation beginning April 11, 1996 at the rate of $66.45 per week, for the remainder of her life and until further Order of the Industrial Commission, whichever first occurs. N.C. Gen. Stat. § 97-29.
3. Where an employee's effort to obtain employment would be futile because of age, inexperience, lack of education, or other pre-existing factors, the employee should not be precluded from compensation for failing to engage in the meaningless exercise of seeking a job which does not exist. Lackey v. R.L. Stowe Mills,Inc., 418 S.E.2d 517, cert denied, 421 S.E.2d 150 (1992). Evidence of an employers refusal to allow an employee to return to work because there was no "light" work available supports a finding that the employee is not capable of earning wages in the same employment. Moore v. Davis Auto Serv., 456 S.E.2d 847
(1995).
4. Plaintiff is entitled to the reasonable and necessary nursing expenses, medicines, sick travel, medical, hospital and other treatment or course of rehabilitative services at defendants' expense for the remainder of plaintiff's life or until further Order of the Industrial Commission, whichever first occurs. N.C.G.S. § 97-29; N.C.G.S. § 97-2(19).
 ***************
Based on the foregoing findings of fact and conclusions of law, the Full Commission affirms the holding of the Deputy Commissioner and enters the following:
 AWARD
1. Defendants shall pay plaintiff compensation for total disability for the remainder of her life, or until further Order of the Industrial Commission, which ever first occurs, at the rate of $66.45 per week, beginning April 11, 1996. Amounts which have accrued shall be paid to plaintiff in a lump sum, subject to the attorney fee approved in Paragraph 3.
2. Defendants shall pay all reasonable and necessary nursing expenses, medicines, sick travel, medical, hospital and other treatment or course of rehabilitative services at defendants' expense for the remainder of plaintiff's life or until further Order of the Industrial Commission, whichever first occurs.
3. A reasonable attorney fee of 25% of the compensation due plaintiff under paragraphs 1 and 2 of this AWARD is approved for plaintiff's counsel and shall be paid as follows: 25% of the lump sum due plaintiff shall be deducted from that sum and paid directly to plaintiff's counsel. Consideration and designation of this attorney fee contemplates that counsel for the plaintiff shall continue and is ORDERED to monitor the submission of plaintiff's medical expenses.
4. Defendants shall pay the costs.
This the 4th day of May 1998.
 S/ _____________ THOMAS J. BOLCH COMMISSIONER
CONCURRING:
S/ ______________ CHRISTOPHER SCOTT COMMISSIONER
DISSENTING:
S/ ______________ DIANNE C. SELLERS COMMISSIONER